IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

RUSSELL D. TOWNER,

                           Plaintiff,

                                                    Civ. Action No.
                                                    3:15-CV-0963 (GLS/DEP)

        v.

COUNTY OF TIOGA, *et al.,*

                           Defendants.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF:

BENJAMIN LAW OFFICE              RONALD R. BENJAMIN, ESQ.
P.O. Box 607
126 Riverside Drive
Binghamton, NY 13902-0607

FOR DEFENDANTS:

FRANK MILLER LAW OFFICE          FRANK W. MILLER, ESQ.
6575 Kirkville Rd.               CHARLES C. SPAGNOLI, ESQ.
East Syracuse, NY 13057

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

DECISION AND ORDER

        This is an action brought by plaintiff Russell D. Towner, who initially

filed the action *pro se* but is now represented by counsel, against

defendants Tioga County, Kirk O. Martin, Patrick Hogan, Wayne Moulton, and C. J. Alexander, asserting various state and federal claims, including false arrest and imprisonment, and malicious prosecution.

Plaintiff has moved for an order compelling defendants to produce certain discovery withheld by defendants on the basis of claims of attorney work product and the attorney-client privilege. *See generally* Dkt. No. 139. By cross motion, defendants have moved for an order compelling plaintiff to respond to certain document requests dated September 29, 2016. *See generally* Dkt. No. 145. For the reasons that follow, I conclude that plaintiff's motion should be granted in part, and defendants' motion should also be granted.

I.    <u>BACKGROUND</u>

According to the allegations contained in the operative complaint, from February 2014 through May 2014, plaintiff was incarcerated in the Tioga County Jail, located in Owego, New York. Dkt. No. 122 at 2. While confined in that facility, on March 26, 2014, plaintiff wrote to a Tioga County assistant district attorney to warn her that his fellow inmate, David Nugent, was plotting to murder her. *Id.* at 2-3.

In April 2014, defendant Kirk O. Martin, the District Attorney for Tioga County, arranged for plaintiff to meet with defendants Patrick Hogan

2

and Wayne Moulton, two investigators employed by the Tioga County Sheriff's Department to discuss the matter. Dkt. No. 122, at 3. Plaintiff was interviewed by defendants Hogan and Moulton on April 10, 2014, in the presence of Towner's criminal defense attorney. *Id.* at 3. Plaintiff alleges that after Investigator Hogan told him he would be "acting as an agent of the police and nothing you say or do can be used against you," Towner agreed to cooperate in securing evidence against Nugent. *Id.* at 4-5. On the same day, plaintiff "lure[d]" Nugent into the jail's law library to discuss the threats that he was making. *Id.* at 4.

One week later, plaintiff wrote to Investigator Moulton and advised that "a lot has happened since we [last] spoke[.]" Dkt. No. 122 at 4. In that communication, plaintiff also stated that "I've never had any intention of being involved with any of Nugent's schemes at all; merely trying to get bailed out and get myself into a program to get my life together in hopes of a better future and that the court would take everything into consideration[.]" *Id.* According to plaintiff, defendants Martin, Hogan, and Moulton were "all aware" that plaintiff was merely acting as an "agent of the police[,]" and that he was not conspiring to murder an assistant district attorney. *Id.*

On May 8, 2014, Nugent's wife posted bail to secure plaintiff's

release from custody. Dkt. No. 122 at 4.    Following his release, plaintiff was subsequently arrested for the crime of conspiracy in the second degree, in violation of N.Y. Penal Law § 105.15, and was accused of conspiring to kill the assigned district attorney. *Id.* Those charges were ultimately dismissed. *Id.* at 5-6.

As a result of the foregoing, plaintiff alleges that he was falsely arrested, and maliciously prosecuted, and that his due process rights were violated. Dkt. No. 122.

II.    PROCEDURAL HISTORY

Plaintiff, commenced this matter in Tioga County Supreme Court. Dkt. No. 1. On August 5, 2015, defendants removed the action to this court pursuant to 28 U.S.C. §§ 1331, 1441(a). Dkt. No. 2. By text order dated February 12, 2016, the court subsequently granted plaintiff's motion to proceed *in forma pauperis.* Dkt. No. 44. Plaintiff's present counsel entered an appearance in the action on February 1, 2016. Dkt. No. 38.

A.    Plaintiff's Discovery Demands

During the course of discovery, plaintiff served a demand for document production pursuant to Federal Rule of Civil Procedure 34. In it, he requested that defendants produce the following documents:

> 1.    The entire investigative file in the case of
> People v. Russell D. Towner, Conspiracy 2nd

4

Degree including any evidence taken into custody in the course of said investigation, all communications whether in email or other format, any videotapes or other films or audio recordings, made in the course of the investigation.

2. All correspondence, emails, and any other communication between defendant Kirk Martin and any other individual, corporation or entity which mention Russell D. Towner from March 2014 to present.

3. All correspondence, emails, and any other communication between defendant Patrick Hogan and any other individual, corporation or entity which mention Russell D. Towner from March 2014 to present.

4. All correspondence, emails, and any other communication between defendant Wayne Moulton and any other individual, corporation or entity which mention Russell D. Towner from March 2014 to present.

5. All correspondence, emails, and any other communication between defendant C.J. Alexander and any other individual, corporation or entity which mention Russell D. Towner from March 2014 to present.

Dkt. No. 139-3 at 4-5. In response to this demand, defendants' counsel

provided a privilege log, dated November 3, 2016, in which defendants

advised that the following documents had been withheld from disclosure

as privileged attorney-client communications, protected work product,

and/or materials prepared in anticipation of litigation:

5

| Date | Document or Documents | Basis for Withholding |
|------|----------------------|----------------------|
| 5/12/14 | Hand written notes to the file by Kirk Martin | Attorney work product |
| 2/23/2015 | E-mail from Judith Quigley to Gary Howard, Kirk Martin, Eric Gartenman, C. J. Alexander, Wayne Moulton, Cheryl Mancini | Attorney - client privilege |
| 6/1/2015 | E-mail from Judith Quigley to Kirk Martin | Attorney - client privilege |
| 11/12/2015 | E-mail from Judith Quigley to Gary Howard, Kirk Martin, Chris Silvestri | Attorney - client privilege/attorney work product |
| 6/30/2016 | E-mail from Cheryl Mancini to Kirk Martin, Rita Basile, Carola Kovalovsky | Attorney - client privilege/attorney work product/trial preparation |
| All relevant dates | All e-mails and correspondence by and between the Law Firm of Frank W. Miller (Frank Miller, Bryan Georgiady, Richard Graham) and Cheryl Mancini, Kirk Martin, Gary Howard, Wayne Moulton, C. J. Alexander, Patrick Hogan, and Eric Gartenman | Attorney - client privilege/attorney work product/trial preparation |

Dkt. No. 139-2 at 2-3 (footnotes omitted).

     B.   <u>Defendants' Discovery Demands</u>

On September 29, 2016, defendants served a second document demand pursuant to Federal Rule of Civil Procedure 34, in which they demanded the production of the following documents:

> 1. Produce each and every document in Plaintiff's possession authored by Allen Stone, Esq. and issued or delivered to KIRK O. MARTIN from March 1, 2014 through and including September 15, 2014 that relates or, pertains to, or describes any of the

events, persons or matters set forth in Plaintiffs
Amended Complaint.

2. Produce each and every document authored by
David Nugent that relates to, pertains to, or
describes any of the events, persons or matters set
forth in Plaintiff's Amended Complaint.

3. Produce each and every document authored by
Ashley Nugent that relates to, pertains to, or
describes any of the events, persons or matters set
forth in Plaintiffs Amended Complaint.

4. Produce each and every document authored by
the Plaintiff and issued or delivered to David Nugent
that relates to, pertains to, or describes any of the
events, persons or matters set forth in Plaintiffs
Amended Complaint.

5. Produce each and every document authored by
the Plaintiff and issued or delivered to Ashley Nugent
that relates to, pertains to, or describes any of the
events, persons or matters set forth in Plaintiff's
Amended Complaint.

6. Produce each and every document Plaintiff
intends to introduce into evidence at the trial of this
action.

Dkt. No. 145-2 at 3-4. According to defendants' counsel plaintiff did not

respond or otherwise object to defendants' demand. Dkt. No. 145-1 at 2.

C.    Discovery Motion Practice

By letters dated December 29, 2017 and January 10, 2018, the

parties requested permission from the court to file motions to compel;

those request were granted on January 11, 2018. Dkt. No. 127, 131. On

7

January 24, 2018, plaintiff filed a motion to compel defendants to produce all of the documents listed on defendants' privilege log, including certain hand written notes and emails, and challenging defendants' decision to withhold documents in issue on various grounds. *See generally* Dkt. No. 139.

Defendants responded to plaintiff's motion on February 13, 2018, adhering to their position that the disputed documents are not discoverable because they were shielded by the work product doctrine and/or the attorney-client privilege. *See generally* Dkt. No. 145. Pursuant to the court's text order dated February 12, 2018, defendants have produced five of the disputed documents for *in camera* inspection by the court. In addition, on February 12, 2018, defendants cross-moved to compel plaintiff to respond their outstanding document demands. *See generally* Dkt. No. 145. Plaintiff has not responded to defendants' cross motion.

The pending motions have been taken on submission, and are now ripe for determination.

III.    <u>DISCUSSION</u>

A.    <u>Work Product Doctrine</u>

8

Defendants invoke the work product doctrine as a means to shield (1) handwritten notes by defendant Martin, dated May 12, 2014, (2) an e-mail dated November 12, 2015, and (3) an e-mail dated June 30, 2016.[1] Dkt. No. 139-2. Defendants also invoke the doctrine to shield all emails and correspondence among various attorneys with Law Firm of Frank W. Miller, defendants, and former defendants. *Id.*

Defendants contend that these documents are not discoverable because plaintiff has not demonstrated the requisite substantial need and undue hardship necessary to overcome the protection of the doctrine. Dkt. No. 145-4 at 5-10. For his part, plaintiff argues that the withheld documents are "relevant," and speculates that, at least with respect to defendant Martin's handwritten notes, they are "likely [to] include information leading up to the [criminal] charge" against plaintiff. Dkt. No. 139-4.

Rule 26(b)(3) of the Federal Rules of Civil Procedure, which codified the common law work-product doctrine articulated in *Hickman v. Taylor*, 329 U.S. 495 (1947), provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation

---

[1]     Defendants also claim that the attorney-client privilege shields the latter two documents from disclosure. *See* Dkt. No. 139-2.

or for trial by or for another party or its representative[.]" Fed. R. Civ. P. 26(b)(3); *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998). The doctrine "preserve[s] a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *Adlman*, 134 F.3d at 1196 (quoting *Hickman*, 329 U.S. at 510-11); *see Schaeffler v. U.S.*, 806 F.3d 34, 43 (2d Cir. 2015).

A document or "tangible thing[]" is not properly characterized as work product unless, "'in light of the nature of the document and factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation.'" *Aldman*, 134 F.3d at 1202 (quoting Charles Alan Wright, *et al.*, *Fed. Practice & Procedure* § 2024 (1994)). Importantly, there is no protection for materials "that would have been created in essentially similar form irrespective of the litigation" or were "prepared in the ordinary course of business." *Aldman*, 134 F.3d at 1202. "Even if such documents might also help in preparation for litigation, they do not qualify for protection because it could not fairly be said that they were created 'because of' actual or impending litigation." *Id.*; *see U.S. v. Constr. Prods. Research, Inc.*, 73 F.3d 464, (2d Cir. 1996).

The party invoking the work product "privilege bears the heavy burden of establishing its applicability." *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007). Because the work product doctrine is a qualified privilege, the materials may still be discoverable if "they are otherwise discoverable under Rule 26(b)(1)" and the party seeking the materials "shows that it has substantial need for [them] to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(i-ii); *see Aldman*, 134 F.3d at 1197.

With this framework in mind, I readily conclude that defendants have failed to sustain their burden of demonstrating that any of the withheld materials were prepared "because of" litigation, such that the work product doctrine applies. There is no competent evidence before the court to show that the documents claimed by defendants to be protected were prepare principally in anticipation of this litigation. The content of those documents, as reviewed *in camera*, alone are not sufficient to meet defendants' burden. In response to plaintiff's motion, defendants' memorandum appears to assume that the work product doctrine applies merely because they have asserted its protection, perhaps misconstruing their burden regarding work product. For example, although defendants assail plaintiff

for speculating as to the contents of defendant Martin's notes, they fail to address whether the notes were created anticipating litigation, and would not have been prepared in substantially similar form but for the prospect of litigation.

In light of defendants' failure, there is no need for the court to address whether plaintiff has made a showing of substantial need for the documents and an inability to obtain the contents elsewhere without undue hardship, and I am constrained to reject defendants' work product claim. *See Adlman*, 134 F.3d at 1202-03.

Because defendants have failed to sustain their initial burden of demonstrating that the work product doctrine applies, it does not shield any of the documents from disclosure. Accordingly, since defendants rely on this ground as the sole basis to shield defendant Martin's May 12, 2014, handwritten notes from disclosure, those notes must be produced to plaintiff.

B.    Attorney-Client Privilege

Defendants invoke the attorney-client privilege to shield (1) an e-mail dated February 23, 2015; (2) an e-mail dated June 1, 2015; (3) an e-mail dated November 12, 2015; and (4) an e-mail dated June 30, 2016. Dkt. No. 139-2. In addition, defendants invoke the privilege as a means to

shield all emails and correspondence between the Law Firm of Frank W. Miller to defendants and former defendants. *Id.*

Defendants argue that these the documents are not discoverable because they are entirely exempt from disclosure. Dkt. No. 145-4 at 9. Plaintiff contends that the court should review all of the disputed documents. Dkt. No. 139-4 at 3.

Since plaintiff's claims arise under federal law, privileges including the attorney-client privilege are informed by "the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501; *Woodward Governor Co. v. Curtiss Wright Flight Systems, Inc.*, 164 F.3d 123, 126 (2d Cir. 1999). "The attorney-client privilege is a privilege of common law that is to be applied 'in light of reason and experience.'" *New York Teamsters Council Prepaid Legal Servs. Plan v. Primo & Centra*, 159 F.R.D. 386, 388 (N.D.N.Y. 1995) (quoting *United States v. Zolin*, 491 U.S. 554, 562, (1989)); *see also* Fed.R.Evid. 501. As the Second Circuit has observed, the "privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011); *see In re County of Erie*, 473 F.3d

413, 419 (2d Cir. 2007). In determining whether the attorney-client privilege applies, a question which involves a fact-intensive inquiry, a court should remain mindful that the privilege seeks "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

As a general matter, the party invoking the attorney-client privilege must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A); *see also* N.D.N.Y. L.R. 7.1(d)(7) ("A party claiming privilege with respect to a communication or other item must specifically identify the privilege and the grounds for the claimed privilege. The parties may not make any generalized claims of privilege."); *Trudeau v. N.Y. State Consumer Protection Bd.*, 237 F.R.D. 325, 334 (N.D.N.Y. 2006) (Treece, M.J.). it is well-established that the party asserting the cloak of the privilege bears the burden of establishing its essential elements. *See von Bulow ex rel. Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987).

In response to the court's February 12, 2018 text order, Dkt. No.

144, defendants have provided the court with the February 23, 2015, June 1, 2015, November 12, 2015, and June 30, 2016 e-mails, which they contend are protected by the attorney-client privilege. Dkt. No. 139-2. After a careful review of the first three of these emails, the court finds that each is protected by the attorney-client privilege. *See Tracy v. NVR, Inc.*, No. 04-CV-6541L, 2012 WL 1067889, at *5-*6 (W.D.N.Y. Mar. 26, 2012) (citing *Major Tours, Inc. v. Colorel*, 2009 WL 2413631 (D.N.J. 2009)); *cf. Buxbaum v. St. Vincent's Health Servs., Inc.*, No. 3:12CV117 (WWE), 2013 WL 74733, *7 (D.Conn. Jan. 7, 2013) (concluding that although a litigation hold notice was not shielded by the attorney-client privilege, it would be shielded by the work product doctrine).

The June 30, 2016 email is another matter, however, inasmuch as the communication contained therein does not serve the interests that underscore the attorney-client privilege. Although the email is between a client and her counsel, the communication is limited solely to a factual matter; no legal advice is mentioned, much less shared or otherwise conveyed between the parties. After a careful review of this email, the court finds that it is not shielded from disclosure by the attorney-client privilege, and must therefore be produced to plaintiff.

The court turns next to defendants' contention that "[a]ll e-mails and

15

correspondence by and between the Law Firm and Frank W Miller" for "[a]ll relevant dates" are protected by the attorney-client privilege. Although plaintiff complains that these communications emails "have not been identified other than from and to whom they would be sent," I conclude that while a small amount of detail has been provided, defendants have nonetheless provided a sufficiently adequate privilege log for the court to conclude that these materials are presumptively protected by the attorney-client privilege.

It is the position of this court that parties should not be required to list on a privilege log, on an ongoing basis, communications between attorney and client once litigation has commenced. Such a requirement would be a cumbersome, unwieldy, and ultimately unnecessary task for defendants' retained counsel, and for that matter plaintiff's attorney, to not only document every communication between lawyer and client during the course of the present suit, but consistently update the privilege log with communications that occurred as the litigation progressed. *See e.g.*, *UnitedHealthcare of Florida, Inc. v. Am. Renal Assocs. LLC*, 2017 WL 6210835 (S.D.Fla. Dec. 7, 2017) ("Parties do not typically seek post-litigation communications of opposing counsel."); *Ryan Inv. Corp. v. Pedregal de Cabo San Lucas*, 2009 WL 5114077, at *3 (N.D. Cal. Dec.

16

18, 2009) (denying motion to compel "log of post-litigation counsel communications and work product" because they are "presumptively privileged"); *Frye v. Dan Ryan Builders, Inc.*, 2011 WL 666326, at *7 (N.D.W.Va. Feb. 11, 2011) (reasoning that party did not have to produce a privilege log for its litigation file). Moreover, although plaintiff recites the legal principles governing the attorney-client privilege, he fails to set forth a basis for arguing that all or some of such documents do not qualify for protection.

Accordingly, while the June 30, 2016 e-mail must be produced to plaintiff, I find that the remaining documents claimed by defendants to be privileged are not subject to disclosure.

C.    Plaintiff's Discovery Response

In their motion, defendants urge the court to order plaintiff to respond to their second request to produce documents, which was served on September 29, 2016 and, they claim, remains outstanding, noting that any potential objections to the request have long since been waived. Dkt. No. 145-4 at 3-5. Defendants further argue that the court should award attorney's fees and expenses pursuant to Rule 37(a)(5)(A) of the Federal Rules of Civil Procedure. *Id.* at 5. As was previously noted, plaintiff has not filed any response to defendants' cross motion.

Rule 34(a)(1) provides that a party may make a demand to produce any designated, relevant documents that are in the "possession, custody, or control" of the party to whom the request is served. Fed.R.Civ.P. 34(a)(1). Generally, "[t]he party to whom the request is directed must respond in writing within [thirty] days after being served." Fed.R.Civ.P. 34 at 34(b)(2)(A). "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if, *inter alia*, "a party fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed.R.Civ.P. 37(a)(3)(B)(iv). As one court has observed, "a complete failure [to respond to discovery demands] strikes at the very heart of the discovery system, and threatens the fundamental assumption on which the whole apparatus of discovery was designed, that in the vast majority of instances, the discovery system will be self-executing." *Doe v. Mastoloni*, 307 F.R.D. 305, 308-09 (D. Conn. May 22, 2015) (quoting 7 Moore's Federal Practice 3d. § 37.90 (Matthew Bender ed.)).

In this instance, the discovery request at issue was served on September 29, 2016, and the thirty-day time period to respond has long since expired. When defendants' called plaintiff's counsel's attention to this fact, instead of providing a response, he invited defendants to make the

present cross motion. Given plaintiff's failure to respond to plaintiff's discovery demand, much less provide an explanation on the present motion as to why a response was not served, the court concludes that plaintiff has waived any objections that he may asserted. Accordingly, conclude that defendants' motion to compel must, therefore, be granted.

Turning next to defendants' contention that they should be awarded attorney's fees and expenses in connection with this motion, Rule 37(a)(5)(A) provides that if a motion to compel is granted, the court "must, after giving an opportunity to be heard, require a party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." However, the court should not order payment if, *inter alia*, the opponent's "nondisclosure . . . was substantially justified" or "other circumstances make an award of expenses unjust." Fed.R.Civ.P. 37(a)(5)(A)(ii)-(iii) (emphasis added); *see also Underdog Trucking, L.L.C. v. Verizon Services Corp.*, 273 F.R.D. 372 (S.D.N.Y. Mar. 7, 2011) (observing that a finding of bad faith is not required as a precondition of an award under Rule 37(a)(5)(A)).

There are at least two circumstances before the court that would make an award of expenses unjust in this matter. First, during the

19

November 1, 2016 telephone conference, defendants indicated that their

September 29, 2016 discovery demands remained outstanding, and I

directed plaintiff to provide a response no later than December 1, 2016.

Dkt. No. 102. During a subsequent telephone conference held on

December 15, 2016, the parties reported that my prior text order "ha[d]

been complied with" and that "[d]iscovery [was] nearly complete."

However, on January 10, 2018, defendants' counsel advised:

> Defendants served a second set of production
> requests on Plaintiff over two years ago, on
> September 29, 2015. I can find in our file nothing to
> indicate that Plaintiff has ever responded, despite a
> follow-up request dated November 3, 2016. Thus,
> Defendants may need to file their own motion to
> compel and/or for other relief.

Dkt. No. 131 at 3. Although this could have been an oversight on the part

of defendants' counsel, this confusing the inconsistency was not

addressed in defendants' cross motion papers.

Moreover, it does not appear that defendants complied with their

obligation to make a good faith effort to resolve or reduce all differences

relating to discovery prior to seeking court intervention. N.D.N.Y. Local

Rule 7.1(d); *see Roy v. DeAngelo*, No. 95-CV-822RSP/DS, 1997 WL

567960, *3 (N.D.N.Y. Sept. 12, 1997) (Pooler, J.). In their January 10,

2018 letter to the court, defendants stated:

> If discovery is to proceed nonetheless, another
> subject will need to be reviewed. Defendants served
> a second set of production requests on Plaintiff over
> two years ago, on September 29, 2015. I can find in
> our file nothing to indicate that Plaintiff has ever
> responded, despite a follow-up request dated
> November 3, 2016. Thus, Defendants may need to
> file their own motion to compel and/or for other
> relief.

Dkt. No. 131 at 3; *see* Dkt. No. 145-1 at 2. Thereafter, defendants' counsel

represented to the court that he had made a "good faith [effort] , to resolve

the matter by raising it with plaintiff's counsel through the January 10,

2018 letter and personally at the discovery conference." There is no

reference to defendants' having made anything other than a cursory

attempt at resolving the dispute in the day that led up to the January 11,

2018 telephone conference. Although the court certainly does not

countenance plaintiff's conduct in ignoring his discovery obligations if in

fact that occurred, this does not obviate defendants' need to make a

genuine, good faith effort to resolve a dispute prior to seeking court

intervention.

Despite being made aware that the motions would be taken on a

submit basis, and my prior direction that plaintiff respond to outstanding

discovery by December 1, 20106, plaintiff failed to respond to defendants'

cross motion, depriving the court of any explanation as to why he has not

21

produced the requested discovery. The court does not condone plaintiff's conduct in failing to respond to defendants' cross motion. Nonetheless, in view of the circumstances, and since both parties partially prevailed in connection with their respective motions, I find that the circumstances here presented would make an award of costs unjust.

IV.    <u>SUMMARY AND ORDER</u>

Plaintiff's discovery dispute presents issues that call upon the court to apply well-settled privilege rules in order to determine whether the documents in issue are worthy of attorney-client and/or work product protection. Having reviewed the documents provided to the court *in camera*, as well as defendants' privilege log, I conclude all but two of the disputed documents are cloaked by the attorney-client privilege. I further conclude that plaintiff's failure to respond to defendants' discovery demands was unwarranted and that plaintiff should be compelled to respond.

Accordingly, it is hereby

ORDERED as follows:

(1) Plaintiff's motion to compel discovery (Dkt. No. 139) is GRANTED in part.

(2) Within twenty-one days of the date of this decision and order,

defendants shall produce to plaintiff the May 12, 2014 handwritten notes of defendant Kirk O. Martin and the June 30, 2016 e-mail from former defendant Cheryl Mancini.

(3) In the event an appeal is taken from this ruling to Senior District Judge Gary L. Sharpe, the foregoing requirement shall automatically be stayed pending further order of the court.

(4) Defendants' cross motion to compel discovery (Dkt. No. 145) is GRANTED.

(5) Within twenty-one days of the date of this decision and order, plaintiff shall respond to defendants' outstanding discovery demands.

(6) No costs or attorney's fees are awarded to any party in connection with the pending motions.

(7) The clerk of the court is respectfully directed to serve a copy of this decision and order upon the parties in accordance with this court's local rules.

David E. Peebles
U.S. Magistrate Judge

Dated:     February 26, 2018
           Syracuse, New York