**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**RUSSELL D. TOWNER,**

               **Plaintiff,**

**v.**

**COUNTY OF TIOGA et al.,**

               **Defendants.**
_____

                      **3:15-cv-963**
                      **(GLS/DEP)**

**APPEARANCES:**            **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Ronald R. Benjamin      RONALD R. BENJAMIN, ESQ.
P.O. Box 607
Binghamton, NY 13902

**FOR THE DEFENDANTS:**
The Law Firm of Frank W. Miller    FRANK W. MILLER, ESQ.
6575 Kirkville Road             CHARLES C. SPAGNOLI, ESQ.
East Syracuse, NY 13057

**Gary L. Sharpe**
**Senior District Judge**

## <u>MEMORANDUM-DECISION AND ORDER</u>

### I. <u>Introduction</u>

Plaintiff Russell Towner brings this action pursuant to 42 U.S.C.

§ 1983 against defendants Tioga County, Kirk Martin, Patrick Hogan,

Wayne Moulton, and C.J. Alexander.  (2d Am. Compl., Dkt. No. 122.)  He

claims that his due process rights were violated and he was falsely arrested and maliciously prosecuted after serving as a cooperating informant at defendants' behest.  (*Id*. ¶¶ 42-58.)  Pending is defendants' 12(b)(6) motion to dismiss Towner's second amended complaint.  (Dkt. No. 124.)  For the following reasons, defendants' motion is granted in part and denied in part.

## II. Background

### A.    Facts[1]

In March 2014, Towner was incarcerated in the Tioga County Jail with another inmate, David Nugent.  (2d Am. Compl. ¶¶ 9-10.)  Nugent informed Towner that he intended to kill an assistant district attorney, Cheryl Mancini, (*id.* ¶¶ 10-11), and solicited inmates including Towner to assist in his devious plan, (*id.* ¶ 12).

Towner wrote Mancini and cautioned that Nugent intended to kill her.  (*Id.* ¶ 13; Dkt. No. 72, Attach. 1 at 18-19.)  After learning of this correspondence, Tioga County District Attorney Martin arranged for a meeting between Towner and investigators Hogan and Moulton.  (2d Am.

---

[1] Unless otherwise noted, the facts are drawn from Towner's second amended complaint and presented in the light most favorable to him.

Compl. ¶¶ 15, 29.)  Martin did not attend the meeting, which was held in early April 2014,[2] but it was recorded.  (*Id.* ¶¶16-18.)

During the meeting, "there was discussion" about having Towner lure Nugent into the jail library to discuss his plans while investigators secretly monitored the conversation.[3]  (*Id.* ¶ 20.)  Hogan assured Towner that he would be "'acting as an agent of the police'" and that nothing he said or did could be used against him—a statement that Martin allegedly learned of. (*Id.* ¶¶ 19, 26.)  Hogan directed Towner to "'show [the investigators] [he] care[d] about this woman's life.'"  (*Id.* ¶ 19.)  And Moulton told Towner that they arranged for a correctional officer at the jail to serve as the middle man during the operation.  (*Id.* ¶ 21.)

Shortly thereafter, Towner successfully lured Nugent into the jail library and engaged him in a discussion about his threats against Mancini. (*Id.* ¶ 22.)  About a week after the library encounter, Towner wrote Moulton and stated that he had no intention of being involved with Nugent's plans; he just wanted to get out of jail and move it on a little farther down the line.

---

[2] Towner initially contends that the meeting was held on April 10, 2014, (2d Am. Compl. ¶¶ 15-16, 18), but later claims that the meeting occurred "on or about April 6, 2014," (*id.* ¶ 26).

[3] Elsewhere in the complaint, Towner claims that Martin requested him to meet with Nugent.  (2d Am. Compl. ¶ 44.)

(*Id.* ¶¶ 23-24.)  In an undated letter provided by defendants, Towner also asked Moulton to put him "in play" by letting him "pretend" to go along with Nugent's plans and allowing him to wear a "wire."  (Dkt. No. 72, Attach. 1 at 21.)  Towner had no further communication with defendants until Nugent's wife bailed him out of jail on May 8, 2014.  (2d Am. Compl. ¶¶ 25, 27; Dkt. No. 133 at 3.)

Upon Towner's release, Hogan asked him to participate in an interview with the sheriff's department.  (*Id.* ¶ 28.)  At some point, "Martin, Hogan, and Moulton made a joint decision or otherwise acquiesced in [Towner] being arrested for [conspiracy in the second degree]."  (*Id.* ¶ 30.) Investigator Alexander, who previously met with "Hogan and/or others involved in the investigation," arrested Towner that same day.  (*Id.* ¶¶ 33-36, 46.)  When "Hogan was asked what facts he had to support a reasonable belief that [Towner] engaged in conduct [constituting conspiracy in the second degree,] [he] admitted he had no facts other than his own belief [that] [Towner] was a disreputable person."  (*Id.* ¶ 32.)  On November 5, 2015, the charges against Towner were dismissed.  (*Id.* ¶ 37.)

B.    **Procedural History**

4

Towner commenced this action in Tioga County Supreme Court alleging various claims under state law, 42 U.S.C. § 1983, and 18 U.S.C. § 242.[4]  (Compl., Dkt. No. 2.)  Thereafter, defendants removed the lawsuit to this court.  (Dkt. No. 1.)  Towner eventually retained counsel, (Dkt. No. 38), and filed an amended complaint, (Am. Compl., Dkt. No. 67).  Defendants filed a motion to dismiss Towner's amended complaint.  (Dkt. No. 72.)  In response, Towner filed a motion for leave to amend his complaint again to add a claim that he "inadvertently omitted."  (Dkt. No. 99.)  After carefully considering the parties' arguments, the court dismissed Towner's negligence claims and his state law claims against all defendants in their official capacities.  (Dkt. No. 111 at 1 n.1.)  The court denied the remainder of defendants' motion to dismiss with leave to renew and gave Towner "one last opportunity to amend his complaint."  (*Id*. at 2.)  Subsequently, Towner filed a second amended complaint,[5] (Dkt. No. 122), and

---

[4] Towner's initial *pro se* complaint named Eric Gartenman, Cheryl Mancini, and Gary Howard as defendants, (Dkt. No. 2), but they were later dismissed, (Dkt. No. 66).

[5] Yet again, Towner "accidentally" omitted a Fourth Amendment claim from his second amended complaint.  (Dkt. No. 133 at 16-17.)  Puzzlingly, Towner asserts that his motion to add this claim is "still pending."  (*Id.* at 1 n.1.)  This is incorrect.  Towner was given an opportunity to amend his complaint and all other motions were denied.  (Dkt. No. 111.)  The court need not discuss Towner's counsel's omission of a Fourth Amendment claim in the second amended complaint, except to say that there is no such claim before the court.  The deadline to amend pleadings has long-since expired and has already been extended once.  (Dkt. Nos. 25, 66.)  This court, for purely pragmatic reasons, gave Towner a second opportunity to amend his complaint beyond the deadline.  (Dkt. No. 111.)  If Towner seeks to amend his complaint a third time, he should follow the proper procedure for requesting leave to do so and

defendants' pending motion to dismiss soon followed, (Dkt. No. 124).

### III.  Standard of Review

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

### IV.  Discussion

### A.  Papers Considered

In determining a Rule 12(b)(6) motion to dismiss, the court may consider the complaint, any exhibit attached to the complaint, materials incorporated by reference, and documents that are integral to the complaint.  *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).  A document is integral to the complaint if the complaint "relies heavily upon its terms and effect."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks and citation omitted).

Towner's response relies on materials outside the four corners of the complaint, which he fails to sufficiently demonstrate were integral to the

---

demonstrate good cause.  *See* Fed. R. Civ. P. 16(b)(4).

complaint or relied upon in drafting it.[6]  As such, and for the reasons stated in defendants' reply, (Dkt. No. 137 at 2-4), these materials are excluded from the court's analysis at this stage.  Defendants also attempt to draw the court's attention to documents outside the complaint.  (Dkt. No. 124, Attach. 1 at 3-4.)  However, because defendants have demonstrated their appropriateness, (*id.*), and Towner concedes as much, (Dkt. No. 133 at 1 n.2), the court factors these documents into its analysis.

## B.    <u>Absolute and Qualified Immunity</u>

For the reasons stated in defendants' memorandum of law, (Dkt. No. 124, Attach. 1 at 10-12), and given Towner's failure to dispute these arguments in his response, (*see generally* Dkt. No. 133), the court finds that Martin is shielded by absolute immunity.  Accordingly, all claims against him are dismissed.[7]

---

[6] Although, as previously addressed, (Dkt. No. 136), this deficiency was not enough to grant defendants' motion to strike Towner's response, (Dkt. No. 134), in its entirety, the memorandum largely fails to respond to defendants' arguments.  Indeed, the greatest value of Towner's opposition memorandum is its embedded reminder that he "is entitled to all reasonable inferences that can be drawn from the allegations in the complaint . . . [and] does not have to plead a particular fact if that fact is a reasonable inference from the facts that are properly alleged."  (Dkt. No. 133 at 15) (citing *Wheeldin v. Wheeler*, 373 U.S. 647, 658 (1963); *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963)).  Luckily for Towner, "[i]f a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to [properly] respond to a Rule 12(b)(6) motion does not warrant dismissal."  *McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000).  As such, like a drifter born to walk alone, the court goes it again on its own.

[7] To the extent that Towner's complaint consists of official capacity claims against District Attorney Martin, these claims are actually claims against the State of New York rather than Tioga County.  *See Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988), *cert. denied*, 488 U.S. 1014 (1989).  Since such

However, defendants' arguments in favor of granting qualified immunity to investigators Moulton, Hogan, and Alexander are not as airtight.  (Dkt. No. 124 at 19-20.)  Qualified immunity applies if either:  "(1) the official's actions did not violate clearly established law, or (2) . . . the official was objectively reasonable in believing in the lawfulness of his actions."  *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 101-02 (2d Cir. 2003).

As more thoroughly discussed below, the complaint demonstrates a lack of probable cause, which violates the clearly established protection against unlawful arrest and prosecution.  *See, e.g.*, *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003) ("Freedom from malicious prosecution is a constitutional right that has long been clearly established."); *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (collecting cases discussing the right not to be arrested without probable cause).  This is so because it can be reasonably inferred that the investigators were all working hand-in-hand behind the scenes and shared the same exculpatory information regarding the operation Towner participated in at their direction.  (2d Am.

_____

claims against the state are barred by the Eleventh Amendment and the state is not a person for § 1983 purposes, the second amended complaint fails to state an official capacity claim against Martin.  *See Tassone v. County of Onondaga*, No. 94-CV-0173, 1996 WL 77429, at *4 (N.D.N.Y. Feb. 15, 1996); *Eisenberg v. Dist. Attorney of Cty. of Kings*, 847 F. Supp. 1029, 1035 n.6 (E.D.N.Y. 1994).

Compl. ¶¶ 19-21, 26, 30, 33-36, 46.)  Nonetheless, despite knowing that

Towner was merely "'acting as an agent of the police,'" they jointly decided

to arrest and charge him.  (*Id*. ¶ 19.)  At this juncture, the court cannot say

as a matter of law that "it was objectively reasonable for the officer[s] to

believe that probable cause existed, or [that] officers of reasonable

competence could disagree on whether the probable cause test was met."

*Myers v. Patterson*, 819 F.3d 625, 632-33 (2d Cir. 2016).

However, defendants are entitled to qualified immunity on Towner's

substantive[8] due process claim.  First, it is dubious whether the Fourteenth

Amendment[9] offers protection from the conduct outlined in Towner's

complaint.  *See, e.g.*, *Albright v. Oliver*, 510 U.S. 266, 269-75 (1994)

("Where a particular Amendment 'provides an explicit textual source of

constitutional protection' against a particular sort of government behavior,

---

[8] Towner fails to specify whether he is claiming a violation of his procedural or substantive due process rights.  (2d Am. Compl. ¶ 47.)  However, it is apparent from the facts alleged and his responsive papers that he is claiming a violation of his substantive due process rights.  (*Id*. ¶¶ 42, 46; Dkt. No. 133 at 14-16.)  The complaint does not allege that Towner was entitled to any particular procedural safeguards before defendants could restrict his liberty.  Instead, the complaint alleges that defendants simply had no probable cause to arrest and charge Towner, regardless of the procedures followed.  (2d Am. Compl. ¶¶ 42, 46.)  Therefore, the court analyzes Towner's claim under a substantive due process framework.

[9] Towner also invokes the due process clause of the Fifth Amendment.  (2d Am. Compl. ¶ 47.)  However, this clause is inapplicable given the dearth of federal action alleged.  *See, e.g.*, *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The [d]ue [p]rocess [c]lause of the Fifth Amendment prohibits the United States, as the [d]ue [p]rocess [c]lause of the Fourteenth Amendment prohibits the [s]tates, from depriving any person of property without 'due process of law.'").

'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'") (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  This is so because the "guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended."  *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).  Towner concedes as much by failing to demonstrate otherwise in his response and, instead, hoping "the [c]ourt will permit consideration of the [F]ourth [A]mendment claim accidentally excluded from the second amended complaint."  (Dkt. No. 133 at 16-17.)

Secondly, even if substantive due process rights in this context were clearly established, to be actionable, the defendants' conduct must be "arbitrary, conscience-shocking, or oppressive in the constitutional sense, not merely incorrect or ill-advised."  *Ferran v. Town of Nassau*, 471 F.3d 363, 370 (2d Cir. 2006) (internal quotation marks and citation omitted). And "time has shown that the judicial conscience is sturdy.  There are very few cases in which this demanding standard has been met."  (Dkt. No. 124, Attach. 1 at 8) (quoting *Labensky v. County of Nassau*, 6 F. Supp. 2d 161, 171 (E.D.N.Y. 1998), *aff'd sub nom. Labensky v. Rozzi*, 173 F.3d 845 (2d Cir. 1999) (Sotomayor, J.)).  Here, "officers of reasonable competence

could disagree" whether defendants' conduct shocks the conscience. *Crotty*, 346 F.3d at 102 (internal quotation marks and citation omitted). Therefore, defendants are shielded from Towner's due process claim by qualified immunity.

Accordingly, defendants' motion with respect to qualified immunity is granted as to the due process claim and denied with leave to renew as to the remaining claims.

**C**.    **§ 1983 Claims**

1.    *False Arrest*

To prevail on a false arrest claim under New York law,[10] a plaintiff must show that "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged." *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (internal quotation marks and citation omitted). An officer has probable cause to arrest, and thus the arrest is privileged, when they have "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to

---

[10] When evaluating claims of false arrest and malicious prosecution under § 1983, the law that governs is the law of the state where the underlying events occurred. *See Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007); *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006).

warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* at 135.  However, an officer's awareness or deliberate disregard of facts supporting an exculpatory defense eliminates probable cause.  *See id.* at 135-36.

Defendants unconvincingly argue that the investigators' conduct is analogous to entrapment, which does not constitute a constitutional violation.  (Dkt. No. 124, Attach. 1 at 15-16) (citing *DiBlasio v. City of New York*, 102 F.3d 654, 656-57 (2d Cir. 1996); *Labensky*, 6 F. Supp. 2d at 177 ("A claim of entrapment does not negate the commission of the crime charged or the existence of any element thereof.  It is an excuse for a crime, not a denial of one.")).  However, this entrapment defense is premised on circumstances "where the predisposition of the defendant to commit the crime was established." *Hampton v. United States*, 425 U.S. 484, 489 (1976).  Here, the conduct alleged in the complaint is more analogous to planting evidence than entrapment.  *See Lewis v. Meloni*, 949 F. Supp. 158, 162 (W.D.N.Y. 1996) ("While 'entrapment' and 'planting evidence' of a crime on an innocent person may be offspring of the same family of offensive police conduct, the latter, if proven, clearly supports a § 1983 action.").  Towner's claim that he was acting as an agent of the

police is an exculpatory defense because it negates a requisite element of the crime of conspiracy; specifically, the *mens rea* element.  *See* N.Y. Penal Law § 105.15 ("A person is guilty of conspiracy in the second degree when, [1] with intent that conduct constituting a class A felony be performed, [2] he agrees with one or more persons to engage in or cause the performance of such conduct.").

Moreover, while it may be true that officers had no duty to investigate Towner's intent at the time he was released on bail, *see Panetta v. Crowley*, 460 F.3d 388, 395-96 (2d Cir. 2006), it can be reasonably inferred from the complaint that defendants were aware that he was acting solely as their agent and not with the actual intention of committing a crime, which carries far more weight than defendants' characterization of a "mere possibility of an innocent explanation consistent with the facts," (Dkt. No. 124, Attach. 1 at 17).  It is unreasonable to think—based solely on the facts in the second amended complaint—that Towner, as a cooperating operative who was following investigators' direction, would intentionally engage in criminal conduct when he knew he was being monitored.

Furthermore, defendants' argument that Towner's prior waiver of his preliminary hearing also waives his present ability to contest probable

13

cause is equally unconvincing.  (*Id.* at 20-21.)  For strategic purposes,

prosecutors often refuse to go forward with preliminary hearings when

there are other grounds to hold a criminal defendant—without conceding a

lack of probable cause.  Just as often, criminal defendants agree to waive

a preliminary hearing in exchange for a favorable deal with the

prosecutor—without conceding the existence of probable cause.  As such,

it is unsurprising that the New York State Appellate Division case relied

upon by defendants stands for the proposition that a presumption of

probable cause attaches to a determination made by a judge only *after* a

preliminary hearing is held.  (*Id.* at 20) (citing *Landsman v. Moss*, 133

A.D.2d 359, 360 (2d Dep't. 1987)).  It would be absurd to hold that a

preliminary hearing *that never was* prevents a plaintiff from later contesting

probable cause.

Without the need for further elaboration, assuming the truth of the

facts as alleged in the complaint and construing all reasonable inferences

in Towner's favor, the claim of false arrest is sufficiently pled.  (*See, e.g.*,

2d Am. Compl. ¶¶ 19-21, 26, 30, 33-36, 46.)

2.    *Malicious Prosecution*

In order to state a claim for malicious prosecution, a plaintiff must

allege that: (1) defendants initiated or continued a criminal proceeding; (2) without probable cause; (3) the proceedings terminated in plaintiff's favor; and (4) defendants were motivated by malice.  *See Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003).  Defendants seek dismissal of this claim, (2d Am. Compl. ¶¶ 52-54), on the grounds that (1) there was probable cause to commence the proceeding, (2) the complaint fails to demonstrate that defendants acted with actual malice, and (3) the complaint fails to allege that any defendants were personally involved with initiating the criminal proceeding against Towner, (Dkt. No. 124, Attach. 1 at 23-25).

Although Towner's malicious prosecution claim focuses on a different probable cause inquiry than his false arrest claim, *see McClellan v. Smith*, No. 1:02–CV–1141, 2009 WL 3587431, at *6 (N.D.N.Y. Oct. 26, 2009), *aff'd sub nom. McClellan v. City of Rensselaer*, 395 F. App'x 717 (2d Cir. 2010), the court cannot agree that the facts objectively support a reasonable belief that a criminal prosecution should have been initiated or continued because the prosecution could succeed, s*ee D'Angelo v. Kirschner*, 288 Fed. App'x. 724, 726-27 (2d Cir. 2008).  The court proceeds with caution at this stage given that the probable cause standard is higher

15

in the malicious prosecution context than it is for false arrest.  *See*

*Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013).  Likewise, with the

question of probable cause still on the table, Towner's amended complaint

sufficiently pleads actual malice.  *See Martin v. City of Albany*, 42 N.Y.2d

13, 17 (1977) (finding that a jury may infer the existence of actual malice if

there is no probable cause to initiate a criminal proceeding).  The

remaining issue of whether each investigator was personally involved in

initiating Towner's prosecution is a closer call.  (Dkt. No. 124, Attach. 1 at

23-24.)[11]  However, while the second amended complaint is certainly not a

model of clarity, at this stage it can be reasonably inferred that the

investigators collectively initiated the prosecution.  *See Manganiello v. City*

*of New York*, 612 F.3d 149, 163 (2d Cir. 2010) (finding sufficient evidence

from which a jury could infer that a detective initiated a plaintiff's

prosecution where he actively participated in a suspect investigation and

---

[11] It is well settled that a plaintiff seeking monetary damages under § 1983 must demonstrate defendants' personal involvement in the alleged constitutional deprivation. *See Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001).  Throughout their brief, defendants argue that, even if Towner was falsely arrested and maliciously prosecuted, each individual defendant was not personally involved in such conduct.  (Dkt. No. 124, Attach. 1 at 4-10.)  However, based on the same facts and reasonable inferences that raze defendants' arguments for qualified immunity from the § 1983 claims, the court is precluded from making such a determination at this stage.  Because "[p]ersonal involvement is a question of fact," *Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013) (internal quotation marks and citation omitted), and the court must honor the 12(b)(6) standard of review, it will not dismiss any defendants where their personal involvement can be supported by reasonable inferences.

regularly collaborated with the prosecutor in an effort to ultimately bring criminal charges); *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000) ("[I]t must be shown that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.") (internal quotation marks and citation omitted). Here, investigators collaborated with Martin and played an active role in bringing charges against Towner. (2d Am. Compl. ¶¶ 15-21, 28, 30, 32-36, 46.) Accordingly, Towner's pleadings are sufficient to retain his audience for at least one more act.

### 3. Conspiracy

Additionally, Towner alleges a claim against defendants for "conspir[ing] to falsely and maliciously charge the plaintiff with conspiracy to murder [ADA] Mancini[] when each of the defendants knew, or should have known, that [Towner] was in fact a good Samaritan who first alerted ADA Mancini to a potential threat on her life and thereafter acted as an agent of the investigators[.]" (2d Am. Compl. ¶ 42.) Towner claims that defendants furthered this conspiracy by meeting with each other, presumably conferring about Towner's operation, and then finally agreeing to arrest him without probable cause. (*Id.* ¶¶ 30, 33-36, 43, 46.)

17

Defendants contend that Towner fails to state a claim for conspiracy.  (Dkt. No. 124, Attach. 1 at 21-22.)

To successfully make out a claim of § 1983 conspiracy, a plaintiff must allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  As defendants point out, "[a] plaintiff must provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end" as well as "some details of time and place and the alleged effects of the conspiracy." (Dkt. No. 124, Attach. 1 at 21-22) (quoting *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000) (internal quotation marks and citation omitted)).

Here, Towner has alleged a tacit agreement between defendants and an approximate time frame.  (2d Am. Compl. ¶¶ 30, 33-36, 46.) Accordingly, although the court appreciates defendants' arguments, Towner's disjointed allegations remain glued together by reasonable inferences for the time being.

18

4.    *Municipal Liability*

Lastly, defendants argue that Towner's § 1983 claims against Tioga County and defendants in their official capacities should be dismissed because he has failed to allege a municipal policy or custom that might give rise to their liability.  (Dkt. No. 124, Attach. 1 at 22-23.)

Generally, § 1983 suits against a municipality require that—in addition to demonstrating an injury to a constitutionally protected right—the plaintiff point to an official custom or policy of the municipal defendant and establish a causal connection between the alleged injury and that custom or policy.  *See Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690, 694 (1978); *Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 22 (2d Cir. 2012).  A plaintiff can establish the existence of a custom or policy by: (1) demonstrating that an unconstitutional decision was issued from an authorized policymaker, *see Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 406 (1997); (2) showing that a municipal agent's conduct was part of a widespread practice that constitutes a custom or usage with the force of law, *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); or (3) demonstrating that a municipality was deliberately indifferent in failing to train or supervise its employees, *see Cash v. County of Erie*,

19

654 F.3d 324, 334 (2d Cir. 2011).  Vague and conclusory assertions of a

municipal custom or policy are insufficient to effectively plead such a claim,

absent "allegations of fact tending to support, at least circumstantially,

such an inference."  *Zherka v. City of New York*, 459 F. App'x 10, 12 (2d

Cir.2012) (internal quotation marks and citation omitted).

Here, Towner fails to allege with any particularity the existence of a

custom or policy that contributed to a violation of his rights.  Rather, the

complaint merely states in conclusory fashion that "Tioga [County] is

responsible for all municipal affairs including but not limited to law

enforcement and employees such as the individual defendants[.]"  (2d Am.

Compl. ¶ 6.)  This is insufficient to allege a municipal policy.  *See Zherka*,

459 F. App'x at 12.  Additionally, Towner does not allege, and it cannot be

reasonably inferred, that any of the named defendants are authorized to

make policy decisions for Tioga County, were improperly trained, or acted

pursuant to some informal custom.

For these reasons, the reasons stated by defendants,  (Dkt. No. 124,

Attach. 1 at 22-23), and in light of Towner's failure to adequately respond

to such arguments, (*see generally* Dkt. No. 133), Towner's claims against

Tioga County are dismissed.  Because Towner's official capacity claims

against the investigators are really claims against Tioga County, *see*

*D'Alessandro v. City of New York*, 17-594-cv, 2017 WL 4641256, at *5 (2d

Cir. Oct. 17, 2017), they are likewise dismissed.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 124) is

**GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** with respect to plaintiff's due process claims against all

defendants, his claims against Tioga County and Martin, and his

claims against Hogan, Moulton, and Alexander in their official

capacities; and

**DENIED** in all other respects; and it is further

**ORDERED** that the Clerk terminate Tioga County and Kirk Martin as

defendants; and it is further

**ORDERED** that defendants shall file an appropriate responsive

pleading within the time allotted by the rules; and it is further

**ORDERED** that the parties shall contact Magistrate Judge David E.

Peebles to schedule further proceedings in accordance with this order; and

it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

March 2, 2018
Albany, New York

Gary L. Sharpe
U.S. District Judge